# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| COREY LEE PERKINS, | ) |
| | ) |
| Petitioner, | ) |
| v. | ) No. 2:11-cv-105-JMS-WGH |
| | ) |
| RICHARD BROWN, | ) |
| | ) |
| Respondent. | ) |

## Entry Discussing Petition for Writ of Habeas Corpus and Denying Certificate of Appealability

For the reasons explained in this Entry, the petition of Corey Lee Perkins ("Perkins") for a writ of habeas corpus must be **denied** and the action dismissed with prejudice. In addition, the court finds that a certificate of appealability should not issue.

## The Petition for Writ of Habeas Corpus

### I. Nature of the Case

Perkins seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a).

### II. Parties

Perkins is confined at a state prison in Indiana. The respondent is Perkins' custodian, sued in his official capacity as a representative of the State of Indiana.

### III. Procedural Background

Perkins was convicted in 2008 of attempted murder. His conviction was affirmed on direct appeal in *Perkins v. State*, 2009 WL 1332522 (Ind. Ct. App. 2009) (unpublished) (*Perkins*). Perkins' petition for transfer was denied on July 23, 2009. A state action for post-conviction relief was filed and then withdrawn. The filing of this action followed. The record has been appropriately expanded.

## IV. Statement of Facts

The evidence relating to Perkins' offenses as set forth at direct appeal is as follows:

Perkins had a romantic relationship with Jackie Montantes, and they had two children together. While still involved with Perkins, Montantes began a relationship with Kameron Rodgers. In March of 2008, Montantes and Rodgers became "serious." Tr. at 77. When Perkins found out, he became angry. Armed with a shotgun, he went to Montantes's East Chicago apartment. He wanted Montantes to invite Rodgers to her apartment, so Perkins could "blow his head off." *Id.* at 89. Montantes refused. Perkins pointed the gun at her and told her that he would blow her head off, too. *Id.* at 90. Montantes locked herself and her children in her bedroom until Perkins left several hours later.

On April 7, 2008, Montantes left work and picked up her children. As she drove home, Perkins attempted to flag her down. Montantes wanted to avoid Perkins, so she decided not to return home immediately. Instead, she went to the Harbor Food Center parking lot. While she was sitting in her parked car with her children, Perkins suddenly appeared, reached in her partially opened window, and grabbed her car keys out of the ignition. He got in the car, and the two began to argue. At some point, they both noticed that Rodgers was in the back seat of a car in the same parking lot. Perkins drove Montantes's car over to Rodgers and told him that he "was going to blow [his] . . . head off." *Id.* at 16. Perkins told the driver of the car that if Rodgers was still in his car when Perkins returned, he would "shoot this . . . car up too." *Id.* Perkins drove away with Montantes and her children.

At approximately 3:00 a.m., on April 10, 2008, Rodgers arrived at Montantes's apartment after a night of drinking with friends. He went to sleep. At about 7:05 a.m., Montantes and her children left, leaving Rodgers, who was still asleep, alone in the apartment. Sometime between 7:05 a.m. and 7:28 a.m., Rodgers was awakened by the sound of someone ascending the stairs. Rodgers opened his eyes and saw Perkins. Rodgers sat up. Perkins shot him with a sawed-off shotgun and ran away. Rodgers saw a hole in his chest. He had a four-by-six inch wound that was about one and one-half inches deep.

Rodgers called 911 and mentioned Perkins's name to the emergency dispatcher. Shortly after 7:30 a.m., paramedics arrived and took Rodgers to the hospital. Before Rodgers was taken to surgery, a detective asked him if he knew the name of the person who shot him.

> Rodgers responded "quickly and clearly" that "Corey Perkins" had shot him. *Id.* at 241. The detective warned Rodgers that his injuries were life-threatening and asked Rodgers if he was "positive that Corey Perkins was the person that shot him." *Id.* at 242. Rodgers nodded and said, "yes." *Id.* Rodgers ultimately survived and testified against Perkins at trial.

*Perkins,* at *1.

## V. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). The Court of Appeals has reviewed the standard to be applied here:

> When a state court has ruled on the merits of a habeas claim, our review is circumscribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254(d); *Harrington v. Richter,* 131 S. Ct. 770, 783–84, 178 L.Ed.2d 624 (2011). Under AEDPA, we may grant relief only if the state court's decision on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). Plainly stated, these are demanding standards. This Court has recognized that federal courts should deny a habeas corpus petition so long as the state court took the constitutional standard "seriously and produce[d] an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591–92 (7th Cir. 2000).

*Atkins v. Zenk,* 2012 WL 272848, *4 (7th Cir. 2012). "Under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo,* 590 F.3d 533, 536 (7th Cir. 2010). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes,* 380 F.3d 1034, 1043 (7th Cir. 2004)(citing *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002)).

In addition to the foregoing substantive standards, "[a] state prisoner . . . may obtain federal habeas review of his claim only if he has exhausted his state remedies and avoided procedurally defaulting his claim." *Thomas v. McCaughtry,* 201 F.3d 995, 999 (7th Cir. 2000). "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for

relief in habeas. Claims not so raised are considered defaulted." *Breard v. Greene,* 523 U.S. 371, 375 (1998) (citing *Wainwright v. Sykes,* 433 U.S. 72 (1977)). Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir. 1992), *cert. denied,* 508 U.S. 962 (1993). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims *because the prisoner had failed to meet a state procedural requirement.*" *Coleman v. Thompson,* 501 U.S. 722, 729-30 (1991) (emphasis added).

> A state is entitled to treat as forfeited a proposition that was not presented in the right court, in the right way, and at the right time--as state rules define those courts, ways, and times. Failure to comply with the state's procedural rules furnishes an independent and adequate state ground of decision that blocks federal collateral review.

*Szabo v. Walls,* 313 F.3d 392, 395 (7th Cir. 2003) (citing cases); *Moore v. Bryant,* 295 F.3d 771, 774 (7th Cir. 2002) ("A federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment."). When procedural default has occurred, it can be overcome if a habeas petitioner "can demonstrate either (a) cause for the default and prejudice (*i.e.,* the errors worked to the petitioner's '*actual* and substantial disadvantage,'); or (b) that failure to consider his claim would result in a fundamental miscarriage of justice (*i.e.,* a claim of actual innocence)." *Conner v. McBride,* 375 F.3d 643, 648 (7th Cir. 2004) (internal citations omitted); *see also Dellinger v. Bowen,* 301 F.3d 758, 764 (7th Cir. 2002), *cert. denied,* 537 U.S. 1214 (2003).

## VI. Perkins' Habeas Claims

Perkins seeks habeas corpus relief based on his claims that (1) the State failed to disprove his alibi defense beyond a reasonable doubt, and (2) Perkins was denied a fair trial because of evidence of his incarceration being improperly placed before the jury. A third claim, associated with Perkins' sentence, has been withdrawn because it does not implicate federal law and hence is not cognizable here. *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010)("But it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts. . . . And we have repeatedly held that federal habeas corpus relief does not lie for errors of state law. It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (some internal citations and quotations omitted).

## VII. Analysis

### A. Sufficiency of the Evidence

Perkins' first claim is that the State failed to disprove Perkins' alibi defense beyond a reasonable doubt. A federal court evaluating the sufficiency of evidence supporting a conviction must construe that evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *McFowler v. Jaimet,* 349 F.3d 436, 446 (7th Cir. 2003) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). The relevant inquiry for a federal habeas court reviewing a sufficiency of evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319; *see also Brumley v. Detella*, 83 F.3d 856, 862 (7th Cir. 1996). A petitioner is only "entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Cabrera v. Hinsley,* 324 F.3d 527, 533 (7th Cir. 2003) (citing *Jackson,* 443 U.S. at 324). Under AEDPA, federal review of a challenge to the sufficiency of the evidence "turns on whether the state court provided fair process and engaged in reasoned, good-faith decision-making when applying *Jackson's* 'no rational trier of fact' test." *Gomez v. Acevedo,* 106 F.3d 192, 199 (7th Cir. 1997), *vacated on other grounds,Gomez v. DeTella,* 522 U.S. 801 (1997).

If Perkins is simply challenging the resolution of credibility conflicts in the alibi defense, this challenge is fundamentally at odds with the test prescribed by *Jackson* because such argument is premised on an assumption antagonistic to the rule in *Jackson.* The Supreme Court has noted that the federal habeas statute "gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983); *see also Kines v. Godinez*, 7 F.3d 674, 678 (7th Cir. 1993). Thus, "[a]ssessment of the credibility of the witnesses is beyond the scope of federal habeas corpus review of a claim of insufficient evidence." *Bowen v. Haney,* 622 F.Supp.2d 516, 546 (W.D.Ky. 2008) (citing *Matthews v. Abramajtys,* 319 F.3d 780, 788–89 (6th Cir. 2003) (internal citation omitted).

Even if Perkins' argument is considered in a broader sense as a challenge to the sufficiency of the evidence, although such a claim is cognizable under *Jackson*, Perkins' claim still fails. The state court's resolution was the same as that which would be reached under the *Jackson* standard.

The Indiana Court of Appeals considered Perkins' challenge to the sufficiency of the evidence and found:

> At trial, Rodgers testified that he saw Perkins at the top of the stairs and that Perkins shot him. Further, the record shows that, beginning with his 911–call, Rodgers had consistently and unequivocally identified Perkins as the shooter. A police detective testified that Rodgers identified Perkins as the shooter "quickly and clearly." Tr. at 241. Rodgers affirmed that Perkins was the shooter in the face of warnings that his condition was life-threatening. In addition, there was ample evidence of motive. The record reveals that Perkins was so angry about Montantes's relationship with Rodgers that on two occasions he had threatened to shoot Rodgers. Thus, there is substantial evidence of probative value that Perkins attempted to murder Rodgers.
>
> On the other hand, Carpenter testified that Perkins was at her home and that she did not hear or see anyone leave her home between 5:00 a.m. and 7:45 a.m. Carpenter's testimony notwithstanding, the victim's identification of Perkins as the shooter is so strong that we cannot say it was unreasonable for the jury to disbelieve Perkins's sister's testimony.

*Perkins,* at *3.

The Indiana Court of Appeals understood this challenge to the evidence and in evaluating that challenge employed a test comparable to that under *Jackson. Perkins,* at **2-3. *Oswald v. Bertrand,* 374 F.3d 475, 477 (7th Cir. 2004) ("So long as the standard it applied was as demanding as the federal standard . . . the federal claim is deemed adjudicated on the merits and its rejection therefore entitled in this habeas corpus proceeding to the deference prescribed by section 2254(d)(1)."). The Indiana Court of Appeals' discussion provided both Perkins and the State of Indiana with fair process and did not run afoul of the AEDPA standard as expressed in 28 U.S.C. § 2254(d)(1), and hence Perkins is not entitled to relief based on this claim.

### B. Prosecutorial Misconduct

Perkins' second alleged basis for habeas relief is that the prosecutor committed misconduct by asking Carpenter why she had not attempted to contact Perkins, the police, or Perkins' lawyer, to offer her account of Perkins' being in her home when the shooting occurred, despite Perkins' having been arrested and incarcerated for the offense. Through this question, evidence of his incarceration was improperly placed before the jury.

Improper remarks by a prosecutor during the course of a criminal trial can rise to the level of an unconstitutional deprivation of the right to a fair trial. *Darden v. Wainwright,* 477 U.S. 168, 180–81 (1986). However, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Id.* at 181

(internal quotation marks and citation omitted). "Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *United States v. Young,* 470 U.S. 1, 11–12 (1985). To establish a constitutional violation, the improper remarks must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden,* 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)) (internal quotation marks omitted).

Here, the Indiana Court of Appeals reviewed Perkins' claim to determine whether Perkins was placed in a position of grave peril to which he should not have been subjected, noting that, "[t]he gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct." *Perkins,* at *9-10 (quoting *Gregory v. State*, 540 N.E.2d 585, 589 (Ind. 1989)). This standard complies with the federal standard described above.

The Indiana Court of Appeals reasonably determined that Perkins was not prejudiced by the prosecutor's conduct. First, the Indiana Court of Appeals found that the prosecutor's questions were not intended to elicit information regarding Perkins' incarceration, but to show that Carpenter did not immediately come forward with her information. *Perkins,* at *5 n.3. The Court of Appeals also found that Carpenter could easily have answered the prosecutor's questions without mentioning that Perkins was in jail. *Id.* Regardless, the more salient point is that the Court of Appeals reasonably concluded that there was not a substantial likelihood that the evidence in question played a part in Perkins' conviction and that any error was harmless, noting that the trial court had admonished the jury to disregard the prosecutor's question and that the evidence of Perkins' guilt was substantial citing *Shaffer v. State*, 674 N.E.2d 1, 7 (Ind. Ct. App. 1996). This was not only a reasonable application of the controlling federal standard of review for a claim of prosecutorial misconduct, but also a reasonable finding of harmless error. *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

As the foregoing discussion shows, this is a situation in which the Indiana Court of Appeals took the constitutional standard seriously and produced an answer within the range of defensible positions. It is thus a situation in which Perkins is not entitled to habeas corpus relief based on this claim. *Atkins v. Zenk*, 2012 WL 272848, *4 (7th Cir. 2012).

## VIII. Conclusion

This court has carefully reviewed the state record in light of Perkins' claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. The deference due to state court decisions "preserves authority to issue the writ in cases where there is no possibility

fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter,* 131 S. Ct. 770, 786 (2011). Perkins' habeas petition does not present such a situation.

Perkins' petition for a writ of habeas corpus [1] is therefore **denied.**

Judgment consistent with this Entry shall now issue.

### Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the *Rules Governing § 2254* proceedings, and 28 U.S.C. § 2253(c), the court finds that Perkins has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right. . . ." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 03/13/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana